Joseph GELLERMAN, a minor, by and through Jeffie Gellerman, his Guardian Ad Litem, Plaintiff—Appellant,

v.

CALAVERAS UNIFIED SCHOOL DISTRICT, Defendant— Appellee.

No. 00–17205.

D.C. No. CV–98–06192–AWI.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 12, 2002.

Decided July 25, 2002.

Before THOMPSON, W. FLETCHER and BERZON, Circuit Judges.

MEMORANDUM *

Joseph Gellerman, by and through his mother Jeffie Gellerman, appeals the district court's decision holding that the Calaveras Unified School District ("School District") provided Joseph with a "free appropriate public education" as required by the Individuals with Disabilities Education Act ("IDEA," or the "Act"), 20 U.S.C. § 1400, et seq. We affirm. We also deny the Gellermans' motion to supplement the record.

Because the facts are familiar to the parties, we recount them only as necessary to explain our decision.

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

## A.   Procedural Matters

### 1.   *Additional Evidence Submitted to the District Court*

■ The district court did not abuse its discretion by permitting the School District to supplement the record before the court with additional evidence. The IDEA expressly provides that "the court ... shall hear additional evidence at the request of a party ...." 20 U.S.C. § 1415(i)(2)(B)(ii). The district court appropriately and thoroughly weighed the competing concerns identified in *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1472–73 (9th Cir.1993), regarding the admission of supplemental evidence, and acted well within its discretion.

### 2.   *Additional Evidence Submitted to This Court*

■ The Gellermans' motion to supplement the record before this court is denied. The Gellermans have offered no reason for their failure to introduce in the administrative proceedings or the district court the document labeled "Attachment A." We also note that consideration of Attachment A would not affect the outcome of the case, because there is no evidence that the "individual education program" ("IEP") team agreed to the conditions stated in it.

## B.   Substantive Issues

### 1.   *Summary Judgment and Standard of Review*

The Gellermans contend that the district court inappropriately granted summary judgment because of the existence of disputed issues of material fact. As in *Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884 (9th Cir.1995), and *Ojai*, 4 F.3d at 1471–72, however, the district court in this case "essentially conducted a bench trial on a stipulated record." *Id.* at 1472. The district court properly employed this procedure under the IDEA. *Id.; Capistrano*, 59 F.3d at 891–92.

We review for clear error the district court's factual determinations. *Capistrano*, 59 F.3d at 891. We review de novo conclusions of law, including "the ultimate determination of the appropriateness of the educational program." *Id.* Reviewing courts must give "due weight" to the administrative hearing officer's findings by considering those findings "carefully and endeavor[ing] to respond to the hearing officer's resolution of each material issue." *Id.* (internal citation omitted). Although the "amount of deference accorded the hearing officer's findings increases when they are 'thorough and careful,' ... how *much* deference to give state educational agencies is a matter for the discretion of the courts." *Id.* (emphasis in original; alterations in original and citation omitted).

### 2.   *Qualifications of Joseph's Classroom Aide*

■ A state satisfies the requirement that it provide a "free appropriate public education" to a child with a disability

> by providing personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction. Such instruction and services ... must meet the State's educational standards, ... and must comport with the child's IEP.... [I]f the child is being educated in the regular education classrooms of the public education system, [the IEP] should be reasonably calculated to enable the child to achieve passing marks and advance from grade to grade.

*Bd. of Educ. of the Hendrick Hudson Central Sch. Dist. v. Rowley*, 458 U.S. 176, 203, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982). The district court correctly reversed the administrative hearing officer's determina-

tion that Joseph's classroom aide must have prior experience working with Joseph in his home program if the School District is to provide Joseph with a "free appropriate public education," as it must in order to comply with the IDEA. 20 U.S.C. § 1400(d)(1)(A).

Joseph's IEP does not require the School District to assign a classroom aide who has previously worked in Joseph's home program. The January 14 IEP Addendum comes the closest to including such a requirement. It states, however, only that the behavioral consultant "recommends" that the aide "be ... someone who knows Joey's abilities, and also works in the home to facilitate consistency." The IEP team did recognize at the January 14 meeting the importance both of assigning an aide to Joseph's classroom and of increasing communication between Joseph's home program and the school. But the team did not agree to accomplish these objectives by assigning an aide who had *previously* worked in Joseph's home.[1]

▮ Read not to require Joseph's classroom aide to have previously worked in his home program, the IEP nonetheless constitutes an individualized program "reasonably calculated to enable [Joseph] to receive educational benefits," and so meets the substantive requirements of the IDEA. *Rowley*, 458 U.S. at 206–07, 102 S.Ct. 3034; *see also Gregory K. v. Longview Sch. Dist.*, 811 F.2d 1307, 1314 (9th Cir.1987) ("The states are obliged to provide a 'basic floor of opportunity' through a program 'individually designed to provide educational benefit to the handicapped child.'") (quoting *Rowley*, 458 U.S. at 201, 102 S.Ct. 3034).

Joseph's significant academic and social achievement from kindergarten through the beginning of third grade in the School District's regular education classes forms an important backdrop for our consideration of whether Joseph's third grade IEP was reasonably calculated to enable him to receive educational benefit and to advance to the fourth grade. Toward the beginning of Joseph's third grade year, however, his classroom teacher and parents became concerned about his group listening skills, ability independently to initiate and to complete tasks, and social interactions with peers. In response to such concerns, the IEP team met shortly thereafter and agreed immediately to place an aide in Joseph's classroom to implement a behavior modification program designed by a behavioral consultant (who apparently had the full approval of both the Gellermans and the School District). The Gellermans do not contend that the IEP team should have taken different or additional steps to ensure that Joseph would receive educational benefit, other than their insistence that only an aide who had previously worked in Joseph's home could serve as his classroom aide.

The district court's fifty-seven page opinion reveals that the court thoroughly considered the appropriate weight to give to the testimony of the various witnesses who discussed the necessary qualifications for Joseph's aide, as well as to the reasoning and conclusions of the administrative hearing officer. We will not repeat that analysis here, but point out two of the reasons that strongly support the district court's ruling:

First, the behavioral consultant's testimony, which constituted the strongest evidence in favor of the Gellermans' conten-

---

1. Jeffie Gellerman's advocate and the behavioral consultant both made statements after the Addendum was read aloud at the end of the January 14 meeting that make clear that they did not understand the IEP team to have agreed to place in the classroom the aide already working in the home.

tion that only Joseph's home aide could adequately serve as his classroom aide, contained internal inconsistencies and at times provided greater support for the School District's understanding of the necessary qualifications for the classroom aide than it did for the Gellermans'. For instance, the behavioral consultant testified about the role of Joseph's classroom aide as follows:

> Really [his or her] purpose there is to take—to work with the other children as much as possible so as to free up the teacher so that the teacher can be the one to prompt the child—the target child as needed.

Such testimony suggests an aide without any knowledge of Joseph could have successfully helped Joseph's classroom teacher implement the behavioral consultant's behavior plan in order to comply with the IEP and to enable Joseph to receive educational benefit.

Second, the agreement of all involved that Joseph's interim classroom aide served satisfactorily in that role, even though she had not worked previously in Joseph's home, seriously, if not entirely, undermines the finding of the administrative hearing officer that Joseph's aide needed such experience in order for the IEP to provide him with educational benefit. As did the interim classroom aide, another aide could learn about Joseph and his home program from working with him and from working with others who already have knowledge of Joseph and his home program.

In sum, the district court correctly held that the evidence did not support the administrative hearing officer's determination that either Joseph's IEP or the substantive requirements of the IDEA required that the School District assign to Joseph's classroom an aide who had previously worked in his home program.

### 3. *The Assignment of the Classroom Aide*

The district court did not clearly err in its determination that Roseanne Powers possessed the necessary qualifications to serve as Joseph's classroom aide. Because the administrative hearing officer's conclusion to the contrary was based on a qualification not required by the IDEA (that the aide have previously worked in Joseph's home), her opinion was entitled to little, if any, weight.

■ Ms. Powers' college classwork in the education and psychology fields, her thirteen years experience working as a classroom aide, including for a year in a classroom with a high-functioning autistic child, as well as the favorable testimony of those witnesses who had worked with her, demonstrate that her assignment as Joseph's classroom aide was reasonably calculated to ensure that he would receive educational benefit.

### C. Attorneys' Fees

■ The district court did not abuse its discretion in refusing to award the Gellermans attorneys' fees because the Gellermans did not prevail on any issue in this litigation. 20 U.S.C. § 1415(i)(3)(B).

### CONCLUSION

The decision of the district court is AFFIRMED.